IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CREIGHTON SAINT JOSEPH REGIONAL HEALTHCARE, LLC d/b/a SAINT JOSEPH HOSPITAL-CREIGHTON UNIVERSITY MEDICAL CENTER,<br><br>    Plaintiff,<br><br>vs.<br><br>SIMMONDS RESTAURANT MANAGEMENT, INC.; and SIMMONDS RESTAURANT MANAGEMENT, INC. EMPLOYEE BENEFIT PLAN,<br><br>    Defendants. | 8:09CV114<br><br>REPORT AND RECOMMENDATION |

Plaintiff ("St. Joseph Hospital" or the "Hospital") filed this case in the District Court of Douglas County, Nebraska as a state law claim for breach of contract. Defendants ("SRM" and the "SRM Plan") removed the matter to federal court, alleging in the Notice of Removal that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because "the action described in the Complaint involves administration of an ERISA[1] plan." (Doc. 1 at p. 2, ¶ 8).

Now pending is the motion (Doc. 9) of St. Joseph Hospital to remand the matter to state court. The Hospital contends that this court lacks subject matter jurisdiction because

---

[1] The Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*

the claim is based solely on state law and is not preempted by ERISA. The defendants contend that removal to federal court is appropriate because the Hospital's action "relates to an ERISA plan," is completely preempted under §§ 504(a) and 514(a) of ERISA, *see* 29 U.S.C. §§ 1132(a) & 1144(a), and the federal district court has subject matter jurisdiction over the Hospital's completely preempted claims under 28 U.S.C. § 1331.

The court recommends that the Hospital's motion for remand be denied.

## I. FACTUAL BACKGROUND

The following information was derived from the Complaint, the parties' briefs, and the record as a whole.

The SRM Plan is a self-funded employee welfare benefit plan under ERISA. SRM contracted with The Benefit Group (TBG) to provide claims administration services.

St. Joseph Hospital and SRM belong to a preferred provider organization[2] network (PPO) known as "Midlands Choice."[3] The Hospital contracted with Midlands Choice as a preferred provider and agreed to charge participating payors/insurers discounted rates, subject to a condition that the charges be paid within 45 days of the Hospital's submission

---

[2] As discussed in *HCA Health Servs. of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 987 (11th Cir. 2001), a PPO is a network of health care providers organized to offer medical services at discounted rates. Health care providers, such as St. Joseph Hospital, form a network of providers either on their own or by contracting with a third-party entity, such as Midlands Choice, created for the purpose of forming provider networks. The third-party entity acts as a middleman between the providers in the network and third party payors such as the SRM Plan.

[3] Chapter 44, art. 41 of the Nebraska Revised Statutes authorizes the development of preferred provider organizations and the contractual formation of preferred provider insurance arrangements. The court was unable to locate any Nebraska case law, statutes, or regulations specifically governing the resolution of disputes among PPO participants.

of a "clean claim[4]." The complaint alleges that SRM also contracted with Midlands Choice to participate in the PPO. There is no contract between the Hospital and SRM; however, the Hospital alleges that the parties' PPO contracts with Midlands Choice "are to be construed, applied and enforced as a single contract."[5] SRM's alleged contract with Midlands Choice is not of record, but the defendants' brief (Doc. 12 at p. 2/14) seems to verify that such a contract does exist.

Christie French, a beneficiary of the SRM Plan, received medical care at St. Joseph Hospital

(1) from January 11 through February 7, 2006 (First Admission), and

(2) from May 29, 2006 through June 5, 2006 (Second Admission).

The Hospital's billed, e.g., full-price, charges were $696,342.19 for the First Admission and $61,048.47 for the Second Admission. The insurance agreement between Ms. French and the SRM Plan is not of record.

The Hospital states that it presented the two claims to SRM for processing. Midlands Choice repriced the claims and forwarded the discounted PPO pricing to SRM and/or TBG

---

[4] The term "clean claim" is defined in the Hospital's contract with Midlands Choice as a properly completed billing form with the patient's name, the name of the insured, the insured's Social Security number, the relationship of the insured to the patient, the patient's age, the date of service, and applicable coding. Clean claims do not involve coordination of benefits, third-party liability or subrogation issues.

[5] For purposes of this motion, the court does not assume the truth of the plaintiff's legal conclusion that the separate PPO contracts must be construed as a single contract. *Cf. Cosgrove v. Great West Cas. Co.*, 2009 WL 3353013 at *2, Case No. 8:09CV214 (D. Neb., Oct. 16, 2009) (In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'")

for payment. The Hospital also provided SRM with medical records it requested, at which time the claims were deemed "clean claims."

SRM paid the Hospital the discounted amounts (approximately 35% of the originally billed full-price charges) more than 45 days after the Hospital's submission of allegedly "clean claims" to SRM. The Hospital now contends SRM is obligated to pay it the full-price amount of each claim in accordance with the parties' PPO contracts with Midlands Choice, less any deductible and coinsurance.

St. Joseph Hospital has avoided making any allegation in the Complaint that Ms. French assigned to the Hospital her right to receive benefits from the SRM Plan. The Hospital does suggest in its brief and reply brief that Ms. French "may have assigned her rights to benefits" to St. Joseph Hospital, but stands on the argument that it is entitled to full payment from the SRM Plan for the services provided to Ms. French solely as a third party beneficiary of the alleged agreement between SRM and Midlands Choice.

## II. LEGAL ANALYSIS

ERISA broadly preempts state laws, including state common law claims, to the extent that those laws "relate to any employee benefit plan." *See* 29 U.S.C. § 1144(a); *Werdehausen v. Benicorp Ins. Co.*, 487 F.3d 660, 668 (8th Cir. 2007); *Parkman v. Prudential Ins. Co. of America*, 439 F.3d 767, 771 (8th Cir. 2006); *Cosgrove v. Great West Cas. Co.*, 2009 WL 3353013, Case No. 8:09CV214 (D. Neb., Oct. 16, 2009).

The complete preemption doctrine[6] "transforms state law claims into federal claims, thereby creating a basis for federal question jurisdiction." *Clark v. Ameritas Investment Corp.*, 408 F. Supp. 2d 819, 826 (D. Neb. 2005) (citing *Estes v. Federal Express Corp.*, 417 F.3d 870, 872-73 (8th Cir. 2005)).  Complete preemption under ERISA occurs only when the plaintiffs' claims are governed by both § 514 and § 502(a) of ERISA.  *Clark v. Ameritas*, 408 F. Supp. 2d at 828(citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66-67 (1987)).  "In such a case, even if the allegations of the complaint would otherwise provide a basis for recovery under state law, these state law claims are deemed 'completely preempted' by federal law, federal subject matter jurisdiction exists, and removal is appropriate."  *Id.* at 826.

The court must first address the issue of whether the plaintiff's state law claim for breach of contract is completely preempted by the "interlocking, interrelated, and interdependent remedial scheme," found in ERISA § 502(a) (29 U.S.C. § 1132(a)).  *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985).  If the claim is completely preempted, the court must then consider whether the claim "relates to" an employee benefit plan under ERISA § 514 (29 U.S.C. § 1144).[7]

---

[6] "Complete preemption converts a state law civil complaint alleging a cause of action that falls within ERISA's enforcement provisions into '"one stating a federal claim for purposes of the well-pleaded complaint rule."'"  *Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 529 (5th Cir. 2009) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004), in turn quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)).  "In other words, even if the plaintiff did not plead a federal cause of action on the face of the complaint, the claim is '"necessarily federal in character"' if it implicates ERISA's civil enforcement scheme.  *Id.* (quoting *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336-37 (5th Cir. 1999), in turn quoting *Taylor*, 481 U.S. at 64-65).

[7] As Magistrate Judge Piester explained in *Clark v. Ameritas Investment Corp.*, 408 F. Supp. 2d at 828, "express preemption under ERISA § 514, which serves to preempt any state law that 'relates to' an employee

The provision of ERISA's "interlocking, interrelated, and interdependent remedial scheme" applicable in this case is that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). Within the Eighth Circuit, "nothing in ERISA prohibits a plan participant from assigning a cause of action to a health care provider after the services have been rendered and the loss incurred, nor [is there] any language suggesting Congress intended to restrict such assignments." *Lutheran Med. Ctr. of Omaha, Neb. v. Contractors, Laborers, Teamsters and Eng'rs Health & Welfare Plan*, 25 F.3d 616, 619 (8th Cir. 1994), *abrogated on other grounds*, 299 F.3d 966 (8th Cir. 2002); *see Schoedinger v. United Healthcare of the Midwest, Inc.*, 557 F.3d 872, 876 (8th Cir. 2009) (ERISA preempted statutory penalties imposed under the Missouri Prompt Payment Act for the defendant health insurer's failure to pay the plaintiff orthopedic surgeon within 45 days of his submission of claims, where the surgeon's patients assigned their insurance plan benefits to the plaintiffs.).

ERISA § 502(a) limits standing to participants and beneficiaries. In this case, St. Joseph Hospital omitted from the complaint any allegation that the beneficiary, Ms. French,

---

benefit plan, provides a defense against claims not completely preempted by ERISA § 502, but it does not completely preempt state law." In a removed case, if complete preemption does not exist and there is no federal jurisdiction, the matter must be remanded to state court; however, the defendant may still prove in state court that the plaintiff's claims are preempted by ERISA. *See id.* at 829. *See also Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimb. Plan*, 388 F.3d 393, 398 n.4 (3d Cir. 2004) ("Unlike the scope of § 502(a), which is jurisdictional and creates a basis for removal to federal court, § 514(a) merely governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court.").

assigned to it her right to receive benefits from the SRM Plan. Hence, it is argued, the Hospital's claim is not completely preempted under § 502, there is no federal jurisdiction, and the case must be remanded to state court.

While the Hospital's argument is, arguably, supported by the panel decision entered in *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimb. Plan*, 388 F.3d 393 (3d Cir. 2004), that decision is not binding on this court. I note that one member of the panel, Judge Alito (now U.S. Supreme Court Justice Alito), concurred in the judgment for other reasons but was critical of the panel's analysis. This court is inclined to agree with Justice Alito's assessment:

> The Court avoids the question whether an assignee can assert a claim under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), by holding that there is insufficient evidence to support a finding that there were assignments in this case. I disagree. **While the summary judgment record does not contain any express assignments of the claims at issue, there is ample evidence to support a finding that the claims were assigned to the Hospital.** What happened here is very common. Participants of a health care plan received treatment from a provider; the participants did not pay for those services but instead gave the provider the information needed to bill their plan; the provider then billed the plan pursuant to a contract obligating the plan to pay the provider on the assigned claims of participants; and the plan paid, albeit at a discounted rate. These facts are more than sufficient to prove that the claims were implicitly assigned to the provider. In holding that the summary judgment record is insufficient to prove assignments, the Court ignores the obvious reality of the situation.

*Pascack Valley*, 388 F.3d at 404-405 (Alito, J., concurring in the judgment) (emphasis added).

In this case, St. Joseph Hospital demands half a million dollars from an ERISA-regulated plan with which it has no contract. It is obvious from the face of the complaint that St. Joseph Hospital cannot recover one red cent from SRM unless it procured an assignment of benefits from the plan beneficiary, Christie French. The Hospital admits in its briefs that it does have such an assignment but dismisses the matter of the assignment as irrelevant, e.g., Doc. 13 at p. 2/7. The Hospital maintains in its reply brief that it has not asserted any claim for benefits, Ms. French has no rights under the "Midlands Choice PPO Contract," and that Ms. French "has sustained no damages as a result of its breach." Doc. 13 at p. 3/7. The court disagrees with these assertions.

The allegation at ¶ 19 of the complaint that it was "customary in the PPO industry for there to be no direct contract between a provider of health care services and a payor for the recipient of health care services," led the court to independently research the practices of the PPO industry and to the Eleventh Circuit's discussion in *HCA Health Servs. of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982 (11th Cir. 2001).

The discussion in *HCA Health Servs.* generally pertains to the applicable standard of review on a claim for out-of-network services, but is of value in this case because it demonstrates by hypothetical example why plan administrators' interpretations of third-party insurance arrangements and deals made among PPO networks do, in fact, relate to the administration of ERISA plans. The salient point is that it is the plan beneficiary who is ultimately left "on the hook" for the remainder of the hospital bill after the insurer, the

hospital, and the PPO middleman have worked their contractual magic. *See* 240 F.3d at 104-1005 & n.48.

In this case, the "Midlands Choice Preferred Provider Arrangement PHO Agreement" between Midlands Choice and St. Joseph Hospital provides at ¶ 2(b) that the Hospital is allowed to bill Participants, i.e., patients, for co-insurance, co-payments and deductibles. Complaint Exhibit A1 at p. 3. Surely these amounts will be much more for a full-price hospital bill totaling $757,390.66 than a 65% discounted hospital bill of $265,086.73. The plan administrator's decision not to pay full price will directly and significantly affect the beneficiary's rights under ERISA.[8]

> ERISA preempts state laws that conflict with its provisions or frustrate its objectives. *Boggs v. Boggs,* 520 U.S. 833, 841, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997). The Supreme Court has repeatedly held that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."

*Schoedinger v. United Healthcare of the Midwest, Inc.*, 557 F.3d 872, 875-76 (8th Cir. 2009) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208-09 (2004)).

As discussed above, the "obvious reality of the situation" presented in this case is that the plan beneficiary assigned to St. Joseph Hospital her right to receive benefits under the

---

[8] *But cf. Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 530 (5th Cir. 2009), holding that "[a] claim that implicates the *rate* of payment as set out in the Provider Agreement, rather than the *right* to payment under the terms of the benefit plan, does not run afoul of [*Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)] and is not preempted by ERISA." (Citing *Blue Cross v. Anesthesia Care Assocs. Med. Group, Inc.,* 187 F.3d 1045, 1051 (9th Cir. 1999)). In this case, the Hospital's claim implicates more than the rate of payment set out in the agreement between Midlands Choice and St. Joseph Hospital.

SRM Plan. The Eighth Circuit acknowledged 15 years ago that "[d]enying standing to health care providers as assignees of beneficiaries may undermine the goal of ERISA, namely to improve benefit coverage for employees." *Lutheran Med. Ctr. Center*, 25 F.3d at 619. One reason for allowing provider-assignees derivative standing is to discourage the providers from balance-billing the participants, thereby requiring the participants to sue their insurance companies for unpaid benefits. *See HCA Health Servs.*, 240 F.3d at 991 & n.19. The somewhat limited factual information presented to this court indicates that the SRM Plan paid the Hospital a significantly discounted amount more than 45 days after receiving the Hospital's "clean claim" for the assigned benefits, leaving the plan beneficiary exposed to liability for the rest of the bill.

The Eighth Circuit recently stated in *Schoedinger* that "even if a provider asserts a contract right independent of his right under the patient's assignment of plan benefits, the impact of additional state law remedies on ERISA plan administration may require preemption of a state law claim based on that contract." 447 F.3d at 876. Characterizing the scenario alleged in the Hospital's complaint as a mere breach of contract claim would frustrate the goal of ERISA–to improve benefit coverage for employees.

I find that the Hospital's claim is governed by both § 514 and § 502(a) of ERISA, is completely preempted under ERISA, this court has federal question jurisdiction under 28 U.S.C. § 1331, and that the Hospital's motion for remand and for costs and attorney's fees should be denied.

### III.  RECOMMENDATION

**IT IS RECOMMENDED** that the "Motion to Remand and for Costs and Attorney Fees" (Doc. 9) filed by the plaintiff, Creighton Saint Joseph Regional Healthcare, LLC d/b/a Saint Joseph Hospital-Creighton University Medical Center, be denied in its entirety.

Pursuant to NECivR 72.3, a party may object to this Report and Recommendation by filing an "Objection to Magistrate Judge's Recommendation" within 10 business days after being served with this Report and Recommendation.  The objecting party must comply with all requirements of NECivR 72.3.

**DATED October 28, 2009.**

BY THE COURT:

s/ F.A. Gossett
**United States Magistrate Judge**